Ruffin, Chief Justice.
 

 There is no reason, we think, for impeaching the conveyance to Harris. He paid the full value of the slaves, not as a loan, but as the price upon a purchase, and took a deed and immediate possession. It is true, ther'e was a verbal agreement or understanding, that Roles, upon his return, might “ redeem or re-purchase.” But it does not follow, that before his return, a creditor might attach and sell the negroes. The plaintiff’s counsel admitted at the trial, that the transaction was
 
 bona fide,
 
 and was not a mortgage, nor intended to be so. It appears to us,-that those admissions are decisive against this action. Had there been
 
 *182
 
 reality a mortgage, with a parole proviso for redemption, ProPerty speaking, then, as that would have been in evasion oí the act of 1820, 1 Rey. Stat. ch. 37, sec 23, the deed Would have b.een void.
 
 Gregory
 
 v. Perkins, 4 Dev. 50.—But, as contradistinguished from a mortgage, this transaction has every feature of a sale and conveyance, accompanied by a parole agreement for a re-sale at the same full price, at the election of the first owner.
 
 Poindexter
 
 v.
 
 McCannon, 1
 
 Dev. Eq. 373. Indeed, that follows from the admission, that a mortgage was not intended. The counsel for the plaintiff insists, however, that if the transaction be in its nature’a contract for the re-sale of the negroes, it is fraudulent and void as to the creditors, because , there is, as he says, a valuable interest in the debtor, not reserved openly in the deed, but resting in confidence between the parties. For these positions, the case of
 
 Gregory
 
 v.
 
 Perkins,
 
 is the authority.— But that case has in view, throughout, only those conveyances, which, whatever be their form, are intended by the parties’
 
 as securities:
 
 upon which, if the instrument set forth the true and whole agreement,
 
 the property,
 
 in the view of a Court of Equity, is deemed to be all along in the apparent vendor, though liable as a security, for a sum of money to the apparent vendee. In other words, that case treats of such' transactions as seem to the world to be real sales; but are, as between the parties, secretly mortgages, or
 
 in the nature of mortgages.
 
 But, the present is a transaction of a different kind. There might possibly have been a dispute — though a very slight one^ — whether this were intended as a security or not. But when it is once ascertained that it was not so intended, and that it is fair and honest in its present form, it follows that neither the act of 1820, nor of 13 Eliz., 1 Rev. Stat. ch. 50, sec. 1, can touch it. The omission of any provision for a re-sale, in writing, does in no manner prejudice the creditor; for if it had been inserted, it would not have vested in Roles a property in the slaves, which the creditor could reach either at law or in equity. It is to be recollected, that if it had been put into the deed, it would not have made it a mortgage; for that was not intended; and, consequently, we must say, it should not have that
 
 *183
 
 effect. It was not, therefore, a conditional sale; but was a sale with a fair stipulation to re-sell. That differs not at all from an ordinary contract to sell. Both constitute executory personal centraets, and are merely
 
 choses in action.
 
 The party alone can enforce the contract, and not his creditors; and even the party can claim the benefit of it only by a strict observance of the time, and every thing else to be done on his part — as to which, nothing appears in this case.
 

 The judgment must, therefore, be reversed; and, under the agreement of the parties appearing in the record, there must, notwithstanding the verdict, be judgment in favour of Harris upon his interplea.
 

 Per Curiam. Judgment reversed.